FILED
CLERK
11/22/2019 3:33 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,

               -against-

RICHARD GRAHAM,

               Defendant.
------------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM &
ORDER**

97-CR-600 (JMA)

**AZRACK, United States District Judge:**

      Before the Court is a motion for a writ of error *coram nobis*, filed by defendant Richard Graham ("Defendant"), seeking to set aside his guilty plea and vacate his conviction and sentence based on ineffective assistance of counsel. (ECF No. 78.) For the reasons stated below, the motion is DENIED.

      In the instant case, Defendant, who has lawful permanent resident alien status, pled guilty to distributing approximately $1,200 worth of crack cocaine on January 21, 1997 in violation of 18 U.S.C. § 841(b)(1)(B)(iii). (ECF No. 78-1.) He entered his plea on February 21, 2001, before United States District Judge Leonard D. Wexler who accepted it as knowing and voluntary. (Id.) On May 15, 2002, Judge Wexler sentenced Defendant to time served with three years of supervised release. (ECF No. 78-2.) Defendant subsequently moved to California and completed the remaining term of his supervised release.[1] (ECF No. 78, at 3.) Approximately fifteen years after Defendant pled guilty, in 2017, he was arrested by U.S. Immigration and Customs Enforcement and removal proceedings were commenced against him. (ECF No. 86 ¶ 4.) According to Defendant's motion papers, the removal notice indicated that, because of his 2001 conviction, he is subject to removal proceedings under Section 240 of the Immigration and

---

[1] It appears Defendant violated the terms of his supervised release in 2005 and was placed on home confinement for 60 days. (ECF No. 77.) There are no other records regarding Defendant's supervised release, but he asserts in an affidavit that he completed his supervised release. (ECF No. 86 ¶ 4.)

Nationality Act. (See ECF No. 78, at 3.) Defendant then filed the instant motion, arguing that his attorney's failure in 2001 to advise him that if he pled guilty, he would most likely be deported, constitutes ineffective assistance of counsel. (ECF No. 78.) This case was reassigned to the undersigned shortly thereafter.

A writ of error *coram nobis* should issue "only where extraordinary circumstances are present." Nicks v. United States, 955 F.2d 161, 167 (2d Cir.1992). To receive *coram nobis* relief, Defendant must show "that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) [he] continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Kovacs v. United States, 744 F.3d 44, 49 (2d Cir. 2014) (quoting Foont v. United States, 93 F.3d 76, 79 (2d Cir. 1996)).

Ineffective assistance of counsel in plea proceedings can constitute a ground for granting a writ of error *coram nobis*. Kovacs, 744 F.3d at 49. However, to prevail on a claim for ineffective assistance of counsel, Defendant must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 688, 693 (1984)).

Defendant asserts that he can meet the first Strickland prong based on the Supreme Court's decision in Padilla v. Kentucky, 559 U.S. 356 (2010). While Defendant correctly states the holding of Padilla—that failing to advise a client of the immigration consequences of their plea amounts to constitutionally deficient assistance under prevailing norms—the Supreme Court subsequently made clear in Chaidez v. United States, 568 U.S. 342 (2013), that because Padilla announced a new rule under Teague v. Lane, 489 U.S. 288 (1989), it does not apply retroactively

2

to cases already final on direct review. Accordingly, a defendant whose conviction became final prior to the Supreme Court's decision in Padilla—such as Defendant—cannot benefit from its holding. Id. at 358.

Prior to Padilla, the applicable standard in the Second Circuit was that "an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is . . . objectively unreasonable" under Strickland. United States v. Cuoto, 311 F.3d 179, 188 (2d Cir. 2002) abrogated on other grounds by Padilla 559 U.S. 356; see also Kovacs, 744 F.3d at 50–51 (finding that the Couto rule was not a "new rule," as by 2001 it was already "indicated, and was awaiting an instance in which it would be pronounced"). Here, there is no evidence of any affirmative misrepresentation by Plaintiff's counsel regarding the deportation consequences of his plea deal.[2]

According to the record, the subject of Defendant's immigration status did not arise at his plea hearing or at sentencing. (See ECF Nos. 78-1, 78-2.) Furthermore, the affidavit from Defendant's allegedly ineffective counsel indicates that he (1) does not remember being aware of Defendant's citizenship or immigration status at the time of his representation; and (2) does not recall ever advising Defendant of any immigration consequences during the course of his representation. (ECF No. 78-3.) Finally, in Defendant's recently-filed affidavit, he confirms that his immigration status was never mentioned in open court, but asserts he informed his attorney that he was born in Jamaica and had lawful permanent resident status, and that his rap sheet indicated he was born in Jamaica, so his attorney was, or should have been, aware of his immigration status. (ECF No. 86.) However, even if Defendant's attorney had been aware of his

---

[2] Notably, Defendant does not appear to argue that his attorney misrepresented the consequences of his guilty plea, as his papers focus on how his attorney failed to inform him of any immigration consequences. Indeed, his motion states that his attorney "never mentioned or ever advised [Defendant] or the court that . . . [Defendant] would likely be deported or suffer adverse immigration consequences as a result of accepting the plea." (ECF No. 78, at 3.) Nonetheless, the Court reviewed the record to determine if such a misrepresentation occurred and did not find any.

3

immigration status in 2001–2002, there is still no evidence that Defendant's attorney misrepresented any of the potential immigration consequences, nor does Defendant allege that in his affidavit.

Defendant thus finds himself in the same position as the petitioners in Padilla and Chiadez. As Defendant's conviction became final well before the Supreme Court's 2010 decision in Padilla, the Court is bound by the Chiadez holding and Defendant cannot rely on the new rule announced by the Supreme Court in Padilla. See Chaidez, 568 U.S. at 358. Pursuant to this binding Supreme Court precedent, Defendant has failed to satisfy the first prong of the Strickland test so the Court need not determine whether he can "affirmatively prove prejudice" arising from his counsel's representation.

Based on the foregoing, Defendant has not demonstrated a fundamental error in the underlying criminal proceedings and his motion for a writ of error *coram nobis* is DENIED.

While the Court is bound by the Supreme Court's decisions, Defendant, who has not lived in his native country of Jamaica since he was a child and has apparently lived his life productively and lawfully since completing his supervised release, certainly presents a sympathetic case. Accordingly, the Court urges the Government to stand by its offer to write a letter to the Immigration Court confirming Defendant's status as a cooperator in the underlying criminal proceedings so that court can take Defendant's assistance into consideration in his immigration proceedings. (See ECF No. 85, at 3 n.6.)

**SO ORDERED.**

Dated: November 22, 2019
      Central Islip, New York

                                                             /s/ (JMA)
                                                   JOAN M. AZRACK
                                                   UNITED STATES DISTRICT JUDGE